JUDGE PETERS
delivered the opinion op the court.
By the first ■ section of article 4 of an act entitled “An act for the benefit of common schools,” approved March 21, *641 1870, it is provided that there shall be a commissioner of common schools in each of the counties of the state, who shall possess a fair English education, good moral character, and ability to manage the common - school interest of the county efficiently.
Section 2 of this article provides that the commissioners shall be elected by the presiding judge and justices of the peace of each county, at the court of claims, to be held in the county in the year 1870, and every two years thereafter. (1 Acts of 1869-70, p. 119.)
At the October term, 1872, of the County Court of Elliott, the same being a court of claims, and at which the presiding judge and a majority of the justices- of the peace for said county were'present, an election for commissioner of the common schools for said county was held, and D. C. De Hart, W. W. Johnson, and S. S. Mobley were candidates. On the first ballot De Hart received four votes, Johnson three, and Mobley two. After the vote was taken it was announced that there was no election, as neither of the candidates had received a majority of all the votes cast; and a second vote was taken, when De Hart got four votes, Johnson four, and Mobley one; the county judge then for the first time voted, and voted for De Hart. The clerk then announced that De Hart was elected. Johnson moved that the vote should be taken over, and the justice who voted for Mobley stated on oath that he voted for Mobley, not knowing that after the first ballot the electors had determined to drop him, which, however, had been determined on by a majority of the justices. They then, as the record states, ordered a re-election, to which De Hart at the time excepted; the vote then stood for De Hart four and for Johnson five votes. The presiding judge then offered to vote for De Hart. Johnson objected to his voting, and insisted that he had no right vote, as he (Johnson) had a majority, and the county judge had no right to vote unless the *642 votes for each of tbe candidates were equal. The justices sustained Johnson’s view of the law, and refused to take his vote, and thereupon Johnson was declared duly elected commissioner of common schools.
De Hart then appeared in court, tendered his sureties, who are admitted to have been good, and moved the court to permit him to execute a bond as required by law, and to qualify as commissioner. The court overruled his motion; and on motion of Johnson allowed him time till the next day to execute bond and take the requisite oath.
In the mean time De Hart filed his petition in the circuit court clerk’s office, enjoining Johnson from executing bond and qualifying, and praying for a mandamus against the county court to compel it to permit him to execute a bond and qualify as the commissioner of common schools for said county. On the trial in the court below the injunction was perpetuated, and peremptory mandamus awarded against the court to permit De Hart to execute bond and qualify as commissioner as aforesaid. And Johnson has prosecuted an appeal from that judgment to this court.
For appellant it is insisted that he was duly elected, because the electors when the vote was taken the third time voted viva voce, having voted on the two previous occasions by ballot, and also because he got a majority of the votes cast at the last time, and his competitor, De Hart, never had obtained a majority of all the votes; while it is contended for DeHart that when the vote ivas taken the second time a plurality of the votes present was cast for him, and that the judge of the county court voted for him, who alone under the constitution was qualified to vote at said election; and that appellant was not elected even if it was legal to take the vote the third time, because the justices improperly and illegally refused to permit the county judge to vote, who had announced his intention to vote for appellee; and if he had been permitted to vote, there *643 would have been an equal number of votes for each candidate, and there would have been no election.
The 15th section of article 8 of the constitution of Kentucky declares that in all elections by the people, and also by the senate and house of representatives, jointly or separately, the votes shall be personally and publicly given viva voce. The election of a common-school commissioner is neither by the people nor by the senate and house of representatives jointly or separately, but by a different body of electors altogether; consequently, as this provision of the constitution is limited to certain designated classes of electors, it does not embrace any others, and those not embraced are left free to vote by ballot or viva voce, whichever way may seem to them the most appropriate.
If immediately after a vote had been taken one of the justices announced he had voted under a misapprehension as to the persons in nomination, and the rest of the voters were satisfied that he did vote under a misapprehension, we can not say that it would be an abuse of discretion to permit' him to change his vote, or for all the electors to cast their votes again; and if that was done fairly and properly, we know of no tribunal legally authorized to review and set aside their action. In this case there does not appear to have been any abuse of a sound discretion in taking the vote the last time.
The legislature certainly had the power to prescribe how the common-school commissioners should be chosen; either by all the legal voters of the counties, or by the patrons of the common schools, or by the county court judges and justices of the peace for the. respective counties, at such times and places as it might prescribe. The election or selection of said commissioners is not a judicial act, and is not inhibited by the thirty-seventh section of article 4 of the constitution of Kentucky.
*644 The legislature had the undoubted right to confer the power to elect or appoint common-school commissioners for the several counties of the state on the county judges and justices of the peace of their respective counties, or on the county judges or the justices of the peace; and having conferred it on the county judges and justices without prescribing the mode of taking the votes, the electors may adopt any fair and just mode that may seem to them best, free from the supervision or control of other tribunals.
' As the electors immediately reconsidered the vote by which appellee received a plurality of the votes cast, under circumstances which we can not from what appears before us deem improper, and when the vote was next taken he had a minority of them — and- even if the county judge had been permitted to vote, he and appellant would have had an equal number of votes — he failed to manifest his right to the office, and the judgment of the court below, perpetuating the injunction and awarding the mandamus, was erroneous, and-is reversed with directions to dissolve the injunction and dismiss the petition with costs.